**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x

**JEFFREY PARKER,** on behalf of himself and all others similarly situated,

Plaintiff,

**-v.-**

**MADEWELL, INC.,**

Defendant.

------------------------------------------------------------x

Case No. ___________

**CLASS ACTION COMPLAINT & DEMAND FOR JURY TRIAL**

Plaintiff**, JEFFREY PARKER** ("Plaintiff" or "Mr. Parker") individually and on behalf of himself and all others similarly situated (collectively, "Plaintiffs"), by and through him undersigned counsel, **Robert Schonfeld, Esq.** of JOSEPH & NORINSBERG, LLC, brings this action against Defendant, **MADEWELL, INC.** ("MADEWELL" or "Defendant"), for violations of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 *et seq*., arising from Defendant's failure to ensure that its ecommerce Website, www.madewell.com is accessible to blind and visually impaired individuals.

## INTRODUCTION

1. Plaintiff JEFFREY PARKER is a legally blind resident of Bronx County, New York, residing at 6355 Broadway, Bronx, New York 10471. According to a November 12, 2025 eligibility certification issued by Dr. Claudette Lomonaco, OD, of 3626 E. Tremont Avenue, Bronx, New York, prepared for the New York State Commission for the Blind and Visually Handicapped ("CBVH"), Mr. Parker has been diagnosed with blindness in his better eye with a visual field limitation of less than 20 degrees, caused by Retinitis Pigmentosa, a hereditary, progressive degenerative retinal disease that destroys photoreceptor cells and produces severe, irreversible peripheral and eventually central vision loss. Dr. Lomonaco's certification confirms that Mr. Parker's visual field constriction meets both the federal and New York State statutory definitions of

legal blindness. See Exhibit A. Because of the severity and permanence of his condition, Mr. Parker cannot read standard print, cannot recognize product photography or graphics, and cannot otherwise visually navigate a digital screen.

2. Because of his permanent and irreversible vision loss, Mr. Parker relies exclusively on screen-reader software, including JAWS (Job Access With Speech), to navigate digital interfaces, read product information, and complete online transactions. When a website is properly coded, JAWS can identify product images, read labels, announce interactive controls, and allow blind consumers to shop independently. When a website is not properly coded, JAWS cannot interpret essential content, rendering the site unusable for blind users.

3. Defendant Madewell, Inc. owns, operates, and controls the commercial retail Website, www.madewell.com, through which it markets and sells premium apparel, denim, footwear, accessories, and related products to consumers nationwide, including in New York. Madewell's product catalog includes women's and men's denim, dresses, tops, sweaters, jackets, footwear, and accessories, as well as seasonal collections, curated lookbooks, and promotional campaigns. The Website functions as a fully interactive online retail store and a primary channel through which Defendant advertises, promotes, and sells its merchandise.

4. Millions of Americans live with significant visual impairments, including more than two million who are legally blind. In New York alone, hundreds of thousands of residents are blind or visually impaired. Congress enacted the Americans with Disabilities Act to eliminate discrimination against individuals with disabilities and to ensure full integration, independent living, and equal opportunity. These protections extend to digital spaces. The Department of Justice has repeatedly affirmed that the ADA applies to the goods, services, privileges, and activities offered by public accommodations on the web, and has issued formal guidance confirming that web accessibility is a legal obligation under Title III of the ADA.

5. The internet has become indispensable for modern life. It is a primary means of shopping, banking, learning, communicating, and accessing essential goods and services. For blind and visually impaired individuals, equal access to websites is critical to participating in society on equal terms. When websites are not designed to be compatible with screen reading software, blind users are excluded from the digital marketplace and denied the independence that sighted users take for granted. This exclusion is not a technical inevitability — it is the direct and foreseeable consequence of a failure to design and maintain websites in conformance with established accessibility standards.

6. Screen reading software works by converting digital content into synthesized speech or refreshable Braille output. For this technology to function, website content must be capable of being rendered into text. Websites that lack alternative text for images, contain unlabeled buttons or links, use improper or empty heading structure, rely on mouse-only interactions, or contain broken ARIA references cannot be interpreted by screen readers. As a result, blind users cannot navigate, understand, or interact with such websites and are denied equal access to the goods and services offered therein. Each of these barrier types was identified on www.madewell.comduring the evaluation of Defendant's Website described more fully below.

7. The World Wide Web Consortium (W3C) has published the Web Content Accessibility Guidelines (WCAG 2.1), which are widely recognized as the industry standard for accessible website design. These guidelines are followed by major corporations, government agencies, and public institutions to ensure that digital content is accessible to blind and visually impaired users. WCAG 2.1 Level AA compliance is readily achievable through standard web development practices and is necessary to provide equal access under the ADA. Defendant, a sophisticated national apparel retailer headquartered in New York and generating more than $800 million in annual revenue, possesses the technical resources, staffing, and financial capacity to

achieve full compliance. As a company employing between 1,000 and 5,000 people and operating a large, nationwide e-commerce platform, Defendant has long had the ability to implement WCAG-compliant accessibility protocols but has chosen not to do so.

8. Plaintiff brings this civil action against Maxwell, Inc., for its failure to design, construct, maintain, and operate its website, www.madewell.com, in a manner that is fully accessible to and independently usable by blind and visually impaired individuals. Defendant's denial of full and equal access to its Website — and therefore to the goods and services offered therein, including its signature personalization services — constitutes a violation of Plaintiff's rights under Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.

9. On three separate occasions — July 10, 2026; July 26, 2026; and August 24, 2026 — Mr. Parker attempted to browse, evaluate, and purchase specific products from Defendant’s Website using JAWS but was denied full and equal access because of the Website’s pervasive accessibility barriers. During these visits, Mr. Parker specifically attempted to research and purchase the Patch-Pocket Shirt in Fine Wale Corduroy; the Men’s Slim Everyday Jeans; and the Women’s Perfect Vintage Jean. These products are not available through third-party retailers in the same curated configurations, making Defendant’s Website the only source from which Mr. Parker could obtain them.

10. During each visit, Mr. Parker encountered multiple accessibility barriers that prevented him from completing his intended purchases, including missing or non-descriptive alternative text on product images, placeholder alt text such as “Icon” and “GRAPHIC,” unlabeled and inaccessible interactive controls, empty buttons, broken ARIA attributes, inaccessible dynamic regions, improperly structured navigational landmarks, and accessible names for interactive controls that bear no relationship to the visible text a sighted shopper sees on the screen. These barriers prevented JAWS from announcing essential product information, including pricing, size and color

options, fabric details, and customer reviews, and prevented Mr. Parker from adding products to his cart or completing checkout.

11. Automated accessibility audits confirm that the barriers Mr. Parker encountered are neither isolated nor incidental. Independent Wave and SortSite accessibility validation reports of www.madewell.com — including scans documenting placeholder alt text ("Icon," "GRAPHIC"), missing alt attributes, empty links, invalid ARIA bindings, unlabeled buttons, inaccessible modal dialogs, role=list elements without listitem children, aria-hidden misapplications, empty href and src attributes, and broken JavaScript files — confirm that the defects Mr. Parker personally experienced are pervasive and systemic across the Website, not confined to the handful of pages he visited. [1] These audits reveal widespread WCAG 2.1 Level A and AA violations across thousands of pages, demonstrating that Defendant's accessibility failures are structural and longstanding. See Exhibit B.

12. Notably, this is not the first time Defendant has been sued over these deficiencies. PACER Case Locator records confirm that Madewell, Inc. has been sued at least ten times for ADA website accessibility violations, including *Lucius v. Madewell, Inc.,* No. 1:2024-cv-20157; *Alvear v. Madewell Inc*., No. 8:2024-cv-02405; *Dalton v. Madewell Inc.,* No. 0:2024-cv-03142; *MCMORLAND v. Madewell, Inc.,* No. 2:2024-cv-00160; *Mendez v. Madewell Inc*., No. 1:2019-cv-11159; *Lopez v. Madewell Inc.,* No. 1:2018-cv-00103; *DeFeo v. Madewell Inc.,* No. 9:2018-cv-80482; *Espinoza v. Madewell, Inc*., No. 1:2018-cv-23798; and other actions dating back

---

[1] Although Plaintiff's counsel conducted only a partial SortSite scan of Defendant's Website, the results nonetheless revealed thousands of accessibility violations across shared templates and components. The scan reviewed 9,008 pages and files before being stopped manually, with approximately 2,757 pages remaining, meaning no more than thirty-five percent of the Website was analyzed. Despite this limited crawl, SortSite repeatedly reported that each defect category appeared on "another 1105 pages," "another 1126 pages," and similar counts, demonstrating that the same barriers replicate across substantially the entire Website. The fact that a partial scan uncovered such extensive failures confirms that Defendant's accessibility violations are systemic, longstanding, and inherent to the Website's underlying codebase rather than confined to the specific URLs Mr. Parker visited.

to 2014. Rather than remediate its Website in response to these lawsuits, Defendant, upon information and belief, did nothing of substance. More than a decade later, the very same categories of barriers alleged in those actions — missing alternative text, empty buttons, broken ARIA attributes, inaccessible dynamic regions, unlabeled interactive elements, and improperly structured markup — remain rampant across the Website, now independently confirmed by current automated audits performed in connection with this action. Defendant's failure to correct known, previously litigated barriers over a period of years demonstrates a pattern of deliberate indifference to the rights of blind consumers, rather than an isolated oversight.

13. Plaintiff seeks a permanent injunction requiring Defendant to remediate the Website's accessibility barriers, adopt accessibility policies and governance, and ensure that the Website is — and remains — fully accessible to blind and visually impaired consumers in substantial conformance with the Web Content Accessibility Guidelines ("WCAG") 2.1 Level AA. Plaintiff seeks a permanent injunction requiring Defendant to remediate the Website's accessibility barriers, adopt accessibility policies and governance, and ensure that the Website is — and remains — fully accessible to blind and visually impaired consumers in substantial conformance with the Web Content Accessibility Guidelines ("WCAG") 2.1 Level AA.

**JURISDICTION & VENUE**

14. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Plaintiff's claims arise under the laws of the United States, including Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.*

15. This Court has supplemental jurisdiction over Plaintiff's related state and local law claims pursuant to 28 U.S.C. § 1367 because those claims form part of the same case or controversy as Plaintiff's federal ADA claims.

16. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. §

1391(b)(2) because Plaintiff resides in Bronx County which is within this District, and accessed Defendant's website from within this District, and experienced the discriminatory barriers alleged herein in this District. Courts in this Circuit have repeatedly held that venue is proper where the plaintiff experiences the discriminatory denial of access to a website. See, *Velazquez v. Don Roberto Jewelers, Inc.*, No. 1:22-cv-05049 (S.D.N.Y. 2023) (Ramos, J.) (venue proper where plaintiff encountered website barriers in the district); see also *Romero v. 88 Acres Foods, Inc.,* 2022 U.S. Dist. LEXIS 9040 (S.D.N.Y. Jan. 18, 2022).

17. Defendant Madewell, Inc. conducts substantial, continuous, and systematic business within this District by marketing, advertising, and selling apparel, denim, footwear, accessories, and related products to New York consumers through its highly interactive retail Website, www.madewell.com. Defendant purposefully avails itself of the privilege of conducting business in New York by transmitting digital content, files, and data to consumers located in this District, fulfilling online orders to New York addresses, and engaging in nationwide e-commerce directed at New York residents. Courts within this Circuit have consistently held that such purposeful, repeated online commercial activity constitutes sufficient minimum contacts for personal jurisdiction. See *Reed v. 1-800-Flowers.com, Inc.*, 327 F. Supp. 3d 539 (E.D.N.Y. 2018); *Andrews v. Blick Art Materials, LLC,* 286 F. Supp. 3d 365 (E.D.N.Y. 2017); Ford Motor Co. v. Mont. Eighth Judicial Dist. Court, 592 U.S. ___ (2021); South Dakota v. Wayfair, Inc., 585 U.S. ___ (2018); *Romero v. 88 Acres Foods, Inc.,* 2022 U.S. Dist. LEXIS 9040 (S.D.N.Y. Jan. 18, 2022); *Sanchez v. NutCo, Inc.,* 2022 U.S. Dist. LEXIS 51247 (S.D.N.Y. Mar. 22, 2022).

18. Accordingly, jurisdiction and venue are proper in this District because Plaintiff resides here, accessed the Website from within this District, and suffered injury here. Courts within this Circuit have consistently held that website accessibility barriers encountered by users within the District provide a sufficient basis for personal jurisdiction over website operators whose digital

platforms target or serve New York consumers, and Defendant's own history of having been sued repeatedly in this Circuit for the same conduct — including *Lucius v. Madewell, Inc.*, No. 1:2024-cv-20157; *Mendez v. Madewell Inc.*, No. 1:2019-cv-11159; *Lopez v. Madewell Inc.,* No. 1:2018-cv-00103; and other ADA actions identified in PACER — forecloses any argument that it lacks fair notice of suit here.

19. This Court is empowered to issue declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202.

**THE PARTIES**

20. Plaintiff Jeffrey Parker is, and at all relevant times was, a resident of Bronx County, New York. Mr. Parker is legally blind and a member of the protected class of individuals under the Americans with Disabilities Act, 42 U.S.C. § 12102(1)–(2), its implementing regulations at 28 C.F.R. §§ 36.101 et seq., and the protections afforded under New York State and New York City law. As confirmed by his examining optometrist, Dr. Claudette Lomonaco, OD, on the New York State Commission for the Blind and Visually Handicapped Report of Legal Blindness, dated November 12, 2025, Mr. Parker suffers from a visual field limitation of less than twenty degrees in his better eye caused by Retinitis Pigmentosa, a permanent and progressive degenerative retinal disease that meets the criteria for legal blindness under both state and federal standards and requires the use of screen reading software to access digital content independently. Mr. Parker's condition has been formally registered with the New York State Commission for the Blind and Visually Handicapped, and his qualifying disability is documented in the certification described herein.

21. Plaintiff is a proficient user of screen reader technology, including NVDA and JAWS, and relies on keyboard navigation and accessible coding to browse, understand, and interact with websites. Because he cannot visually interpret printed or digital information without assistive technology, Mr. Parker depends on businesses to design, construct, and maintain their websites in a

manner that is compatible with screen reading software. Proper semantic structure, meaningful alternative text, labeled interactive controls, and programmatically determinable navigation are not optional features for Mr. Parker — they are the essential technical conditions upon which his ability to access any digital content independently depends.

22. Defendant Madewell, Inc. is a business entity that owns, operates, controls, and maintains the commercial retail Website www.madewell.com, which markets and sells premium apparel, denim, footwear, accessories, and related products to consumers nationwide, including residents of New York. The Website functions as a fully interactive online retail store and a primary channel through which Defendant advertises, promotes, and sells its merchandise, including flagship products such as the Patch-Pocket Shirt in Fine Wale Corduroy, the Men's Slim Everyday Jeans, and the Women's Perfect Vintage Jean. Defendant is responsible for ensuring that the Website is designed, coded, and maintained in a manner that is accessible to individuals who rely on screen-reading technology.

23. For Mr. Parker, the products he sought on www.madewell.com, are directly connected to his life as a legally blind individual navigating daily responsibilities with a severely restricted visual field. Retinitis Pigmentosa progressively eliminates peripheral vision, leaving individuals with only a narrow tunnel of residual sight or none at all. As a result, Mr. Parker cannot reliably read printed labels, identify his personal belongings by sight in public or shared settings, inspect the material construction or color of goods in a physical retail environment, or evaluate the descriptive and dimensional details of accessories without the aid of a screen reader conveying accessible digital content.

24. Defendant markets, advertises, and sells its products directly to New York consumers through its Website, www.madewell.com transmits digital content to users located in this District, and maintains a highly interactive online platform that enables consumers to browse products,

review descriptions, select sizes and colors, compare styles, and complete purchases. The Website includes detailed product pages that present images, descriptions, specifications, pricing, and purchasing information to consumers nationwide. Defendant's Website is the exclusive channel through which certain curated products, seasonal collections, and promotional offerings are sold, making accessible digital access essential for blind consumers seeking to purchase these items. Defendant is responsible for ensuring that its Website is designed, constructed, and maintained in a manner that is compatible with screen-reader technology and accessible to blind and visually impaired individuals.

25. At all relevant times, Defendant has continuously conducted business within the Southern District of New York by offering its goods and services to residents of this District through its Website, www.madewell.com and by repeatedly transmitting digital content, files, and data to consumers located here. Defendant fulfills online orders to New York addresses, markets its products to New York residents, and operates a nationwide e-commerce platform directed at consumers within this District. Defendant's ongoing operation of a highly interactive retail Website directed at New York consumers constitutes continuous and systematic business activity within this District.

## STATEMENT OF FACTS

***Plaintiff's Attempts to Access the Madewell Website and Product Pages***

26. Plaintiff JEFFREY PARKER is a legally blind consumer residing in Bronx County, New York, and is certified by the New York State Commission for the Blind and Visually Handicapped as legally blind, based on a November 12, 2025, eligibility examination performed by Dr. Claudette Lomonaco, OD, documenting blindness in his better eye with a visual field limitation of less than 20 degrees due to Retinitis Pigmentosa. Retinitis Pigmentosa is a permanent, non-reversible, progressive hereditary retinal disease for which there is no curative treatment. Mr.

Parker's remaining vision is insufficient for reading standard print, recognizing product photography, or visually interpreting digital interfaces. As a result, he depends entirely on properly coded, screen-reader-compatible websites to shop independently, evaluate products, and access online information on equal terms with sighted consumers.

27. Retinitis Pigmentosa causes progressive constriction of the visual field, often described as "tunnel vision," which continues to narrow over time and frequently culminates in complete blindness. Mr. Parker's certified visual field of less than 20 degrees leaves him unable to perceive peripheral content on a screen, unable to visually track a cursor, and unable to discern color, contrast, or fine detail in product imagery — deficits that make screen-reader software not a convenience but a necessity for any form of independent digital commerce.

28. **Madewell, Inc.** is a premium American apparel and accessories retailer specializing in denim, tops, dresses, sweaters, jackets, footwear, and accessories for women and men. Madewell has cultivated a reputation among consumers for consistent denim quality, distinctive styling, and curated seasonal collections that are not readily duplicated by mass-market competitors. Madewell sells through its own Website, www.madewell.com, which functions as the primary channel through which consumers research sizing, colors, fabrics, construction details, and curated seasonal offerings not available in comparable configurations from third-party retailers.

29. In the summer of 2026, Mr. Parker began searching for several apparel items he needed for upcoming family events and seasonal wardrobe updates. Because Mr. Parker cannot visually inspect garments in physical stores, evaluate fabric or fit by sight, or read in-store signage, he — like most blind consumers — conducts the overwhelming majority of his shopping online, where accessible product descriptions, size charts, and screen-reader-compatible purchasing flows can, if properly implemented, substitute for the visual inspection available to sighted shoppers. Mr. Parker specifically selected Madewell, and its Website, www.madewell.com, over the many

thousands of other apparel e-commerce websites available to him, for a combination of reasons: (a) Madewell's denim and seasonal collections are widely recommended for their quality and fit; (b) the Patch-Pocket Shirt in Fine Wale Corduroy, the Men's Slim Everyday Jeans, and the Women's Perfect Vintage Jean are flagship products not readily duplicated by mass-market competitors; (c) Madewell's Website advertises detailed product descriptions, fabric information, and curated seasonal styling guidance that Mr. Parker required to make an informed purchase; and (d) Madewell's pricing sits at a level Mr. Parker considers appropriate for durable, well-constructed apparel. Having narrowed his search to Madewell for these reasons, Mr. Parker required an accessible Website to independently evaluate specific garments, compare colors and sizes, read fabric and care information, and complete a purchase — precisely the functions that Defendant's Website denied him.

30. On July 10, 2026, using JAWS on his Windows computer, Mr. Parker navigated to the product page for the Patch-Pocket Shirt in Fine Wale Corduroy, intending to evaluate the garment as a possible purchase. Immediately upon the page loading, JAWS announced multiple product images with placeholder alt text such as "Icon" or "GRAPHIC," or with no alt attribute at all — consistent with SortSite's findings that images across Defendant's Website fail WCAG 2.1 Success Criterion 1.1.1 because they lack accessible names. As a result, JAWS could only announce "Icon," "GRAPHIC," or "image," leaving Mr. Parker unable to determine the shirt's color, corduroy texture, pocket placement, or silhouette — information a sighted user would obtain instantly from the product photography. When Mr. Parker attempted to select a size, JAWS encountered ARIA controls with no accessible name, causing it to announce only "button" repeatedly without identifying which size option was selected, consistent with SortSite's finding that ARIA controls across Defendant's Website lack accessible names in violation of WCAG 2.1 Success Criterion 4.1.2. When Mr. Parker attempted to activate the "Add to Bag" control, nothing happened; the

underlying href attribute was empty, consistent with SortSite's finding that empty href attributes affect numerous pages, including primary calls to action. Because of these compounding barriers — the meaningless placeholder alt text, the unlabeled size controls, and the non-functional "Add to Bag" control — Mr. Parker could not confirm the shirt's details, could not select a size with any confidence, and abandoned the transaction.

31. On July 26, 2026, Mr. Parker returned to www.madewell.com, this time navigating to the product page for the Men's Slim Everyday Jeans. As on the corduroy shirt page, JAWS announced multiple product images with placeholder alt text or no alt attribute, leaving Mr. Parker unable to determine the denim wash, fit, rise, or leg silhouette. When Mr. Parker attempted to review the "Fit & Sizing" section, JAWS encountered empty role=button elements with no accessible name, consistent with SortSite's finding that such defects persist across more than 281 pages in violation of WCAG 2.1 Success Criterion 4.1.2. When Mr. Parker attempted to select an inseam or size, JAWS encountered duplicate element identifiers in the size-selector markup, causing it to lose track of which control had focus and to repeat announcements out of sequence. Unable to confirm the jeans' fit, unable to reliably select a size or inseam, and unable to trust that the "Add to Bag" control had registered his selection, Mr. Parker again abandoned the transaction.

32. On August 24, 2026, Mr. Parker attempted a different strategy: rather than navigating directly to a single product, he visited the product page for the Women's Perfect Vintage Jean, intending to evaluate the garment as a possible purchase for a family member. This page presents, for sighted users, a scrollable product layout with images, size selectors, color selectors, and purchasing controls. Navigating this page with JAWS, Mr. Parker found that the product-image region was marked with ARIA role="list" attributes without required role="listitem" children, consistent with SortSite's finding that this defect appears across numerous pages in violation of WCAG 2.1 Success Criterion 1.3.1. Portions of the color-selector and size-selector regions were

marked aria-hidden="true" even though they remained visible and clickable for sighted users, meaning those controls were entirely invisible to JAWS. When Mr. Parker attempted to activate the "Add to Bag" control, JAWS again encountered an empty href attribute, causing the control to fail silently. Having been defeated by three separate accessibility failures on three separate visits, targeting three different pages of Defendant's Website, Mr. Parker left www.madewell.com without being able to purchase anything.

33. The barriers Mr. Parker personally encountered on the Patch-Pocket Shirt, Slim Everyday Jeans, and Perfect Vintage Jean pages are not isolated defects specific to those three URLs; they are individual instances of the same defect categories that SortSite's automated audits confirm are replicated, page after page, across substantially the entire Website. The placeholder alt text and missing alt attributes that left Mr. Parker unable to evaluate garment details are present on more than 1,125 pages. The unlabeled ARIA controls that prevented Mr. Parker from selecting sizes or colors are present on more than 281 pages. The empty href attributes that defeated Mr. Parker's attempts to activate "Add to Bag" controls are present across numerous pages. The role="list" defects and aria-hidden="true" misapplications that prevented JAWS from announcing product options are present across hundreds of pages. In short, whichever page of Defendant's Website a blind shopper using JAWS, NVDA, or VoiceOver attempts to visit, the odds are overwhelming that he or she will encounter one or more of these defects, precisely because they are baked into the Website's shared templates and components rather than confined to any single product listing.

34. Defendant's Website is not a passive marketing tool. It is a fully interactive retail platform central to Defendant's business model, offering product listings, detailed descriptions, size and color selectors, seasonal collections, a shopping cart, and checkout functionality. Defendant relies on www.madewell.com to market and distribute its products nationwide, including to consumers in New York, and to sell the very products Mr. Parker attempted to purchase, including

the Patch-Pocket Shirt in Fine Wale Corduroy, the Men's Slim Everyday Jeans, and the Women's Perfect Vintage Jean.

35. On information and belief, Defendant has operated www.madewell.com without implementing WCAG-compliant accessibility protocols, notwithstanding more than a decade of repeated ADA lawsuits and the widespread, free availability of automated testing tools such as SortSite and WAVE. Despite long-standing federal guidance and repeated notice, Defendant has not remediated the barriers identified in prior litigation, on the Patch-Pocket Shirt page, on the Slim Everyday Jeans page, or on the Perfect Vintage Jean page. The very same categories of issues — placeholder alt text, missing alternative text, empty and unlabeled links, duplicate and non-unique element identifiers, improperly structured list and landmark markup, aria-hidden misapplications, empty href attributes, and accessible names that bear no relationship to visible labels — persist across product listings, category pages, and navigational flows, reflecting a systemic and knowing disregard for blind and visually impaired users.

36. Plaintiff's intent to return to www.madewell.com is concrete, credible, and ongoing. His interest is not abstract or generalized; it is tied to specific products — the Patch-Pocket Shirt in Fine Wale Corduroy, the Men's Slim Everyday Jeans, and the Women's Perfect Vintage Jean — specific attempted transactions on specific pages, and specific functional needs arising from his blindness, including the need for properly described product photography, accessible interactive controls whose announced names match what a sighted shopper sees, unique and non-duplicated element identifiers, and a purchasing experience in which primary calls to action actually function for a screen-reader user.

37. Mr. Parker continues to seek the Patch-Pocket Shirt in Fine Wale Corduroy, a garment he researched and attempted to purchase during his July 10, 2026, visit specifically because its corduroy texture, tailored silhouette, and seasonal styling matched the aesthetic he wanted and

are not, on information and belief, readily duplicated by mass-market competitors at a comparable price and construction quality. Because Mr. Parker cannot visually inspect fabric texture, color, or construction in person, he depends entirely on an accessible product page — properly labeled imagery, accessible size selectors, and a functioning, clearly announced "Add to Bag" control — to complete this purchase. Once Defendant remedies the placeholder alt text, unlabeled controls, and empty href defects on that page, Mr. Parker intends to return, select a size, and complete the purchase.

38. Mr. Parker also remains interested in purchasing the Men's Slim Everyday Jeans, which he attempted to evaluate during his July 26, 2026, visit. For a blind consumer, the ability to have a screen reader accurately describe denim wash, fit, rise, and leg silhouette is essential to making an informed purchasing decision about a premium denim garment. Mr. Parker intends to revisit the Slim Everyday Jeans product page to evaluate these features in an accessible format and complete the purchase once Defendant's Website presents properly described product photography, accessible interactive controls, and reliable "Add to Bag" functionality free of duplicate-ID interference.

39. Plaintiff's need for accessible online shopping is permanent and ongoing. His Retinitis Pigmentosa-related vision loss prevents him from browsing physical retail stores, reading garment tags, or visually inspecting fabric and construction. As a result, he relies exclusively on accessible e-commerce platforms to evaluate and purchase products such as those offered by Madewell, whose curated seasonal collections — including denim, tops, dresses, sweaters, and accessories — make its Website a particularly valuable, but currently inaccessible, resource for blind consumers seeking distinctive, well-constructed apparel that is not readily available from mass-market alternatives.

## CLASS ACTION ALLEGATIONS

40. Plaintiff brings this action on behalf of himself, and all others similarly situated pursuant to Rules 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure. Plaintiff seeks certification of a nationwide class consisting of:

> All legally blind individuals in the United States who have attempted to access www.madewell.com and, as a result of Defendant's failure to design, construct, maintain, and operate the Website in an accessible manner, were denied equal access to the goods, services, and information offered thereon, including Defendant's personalized leather goods, accessories, travel items, and gift products.

41. Plaintiff also seeks certification of a New York subclass consisting of:

> All legally blind individuals residing in the State of New York who have attempted to access www.madewell.com and were denied equal access to the goods, services, and information offered thereon as a result of Defendant's failure to design, construct, maintain, and operate the Website in a manner compatible with screen reading software and keyboard navigation.

42. The members of the Class and Subclass are so numerous that joinder of all members is impracticable. Defendant Williams-Sonoma, Inc. operates www.madewell.com as a nationwide e-commerce platform generating approximately $73 million in annual revenue, marketing premium personalized leather goods, accessories, travel items, and gifts to consumers throughout the United States. Upon information and belief, there are more than two million legally blind individuals in the United States, hundreds of thousands of whom reside in New York, and a substantial number of whom have attempted to access www.madewell.com and have been denied equal access due to the systemic accessibility barriers documented in the WAVE evaluations conducted on August 20, 2026. Defendant's prior ADA litigation and enforcement history — including, upon information and

belief, the receipt of dozens of written demand letters and formally filed web accessibility complaints targeting Williams-Sonoma, Inc. and its family of brands in federal courts across the United States — further demonstrates that Defendant has long been aware of accessibility failures affecting blind consumers and has nonetheless declined to take meaningful corrective action with respect to www.madewell.com.

43. Common questions of law and fact exist as to all members of the Class and Subclass and predominate over any questions affecting only individual members. These common questions include, but are not limited to:

(a) whether Defendant's Website, www.madewell.com, contains accessibility barriers that prevent blind and visually impaired individuals from independently accessing its goods, services, and personalization features;

(b) whether Defendant's failure to make its Website accessible violates Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.

(c) whether Defendant's failure to maintain accessible digital content violates the New York State Human Rights Law and the New York City Human Rights Law;

(d) whether Defendant's conduct constitutes ongoing and intentional discrimination against blind consumers who rely on screen reading software to access digital content; and

(e) whether injunctive and declaratory relief is warranted to require Defendant to bring www.madewell.cominto full conformance with the Web Content Accessibility Guidelines, Version 2.1, Level AA.

44. Plaintiff's claims are typical of the claims of the Class and Subclass because Plaintiff, like all members of the Class and Subclass, is legally blind, relies on screen reading software and keyboard navigation as his exclusive means of accessing digital content, and was denied equal

access to www.madewell.com due to the same systemic accessibility barriers identified in the WAVE evaluations conducted by WebAIM on August 20, 2026. The barriers Plaintiff encountered — including missing alternative text, missing and empty form labels, empty heading elements, empty button and link elements, and broken ARIA references — are structural and site-wide deficiencies that affect every blind user who visits the Website, not just Plaintiff.

45. Plaintiff will fairly and adequately represent and protect the interests of the Class and Subclass. Plaintiff has no interests antagonistic to those of the Class or Subclass. Plaintiff has retained counsel experienced in ADA Title III litigation, class action procedure, and digital accessibility matters, who are prepared to vigorously prosecute this action on behalf of Plaintiff and all members of the Class and Subclass.

46. Defendant has acted or refused to act on grounds generally applicable to the Class and Subclass, making final injunctive and declaratory relief appropriate with respect to the Class as a whole pursuant to Rule 23(b)(2). Defendant continues to own, operate, and maintain www.madewell.comwithout any policy, plan, or practice sufficient to ensure accessibility for blind and visually impaired users, and without any timeline or commitment to remediate the barriers documented herein, thereby subjecting all blind users who visit the Website to the same discriminatory experience Plaintiff encountered on June 23, 2026, July 10, 2026, and August 12, 2026.

47. Certification under Rule 23(b)(2) is appropriate because Defendant has failed to design, construct, maintain, and operate www.madewell.comin compliance with WCAG 2.1 Level AA, and because Defendant's acts and omissions apply uniformly to all blind individuals who attempt to use the Website. The accessibility barriers identified herein are not individualized — they are consistent, reproducible, and structural features of an inaccessible website that denies equal access to every blind user without regard to the specific product page, transaction, or date of access.

Declaratory and injunctive relief compelling Defendant to bring www.madewell.com into full WCAG 2.1 Level AA compliance is the appropriate and necessary remedy to ensure equal access for Plaintiff and all members of the Class and Subclass.

**FIRST CAUSE OF ACTION**
(Violations of the ADA, 42 U.S.C. § 12182 et seq.)

48. Plaintiff, **JEFFREY PARKER.** on behalf of himself and the Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

Section 302(a) of Title III of the ADA, 42 U.S.C. § 12101 et seq., provides:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a).

49. Defendant's Website, www.madewell.com is a service of a place of public accommodation and a digital gateway through which Defendant offers goods, services, privileges, and advantages to the general public. As such, the Website must be equally accessible to all consumers, including blind and visually impaired individuals who rely on screen reading technology.

50. Defendant has failed to design, construct, maintain, and operate its website in a manner that is fully accessible to blind and visually impaired individuals, in violation of Title III of the ADA and its implementing regulations.

51. Defendant's website contains numerous accessibility barriers—including missing alternative text, broken ARIA references, unlabeled buttons, inaccessible pop-ups, improper heading structure, and aria-hidden focusable content—that prevent blind users from perceiving,

navigating, and interacting with the website.

52. Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities the opportunity to participate in or benefit from the products, services, facilities, privileges, advantages, or accommodations of an entity. 42 U.S.C. § 12182(b)(1)(A)(i).

53. Under Section 302(b)(2) of Title III of the ADA, unlawful discrimination also includes, inter alia:

> [A] failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations; [and] a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden.
>
> 42 U.S.C. § 12182(b)(2)(A)(ii)-(iii).

54. The acts alleged herein constitute violations of Title III of the ADA and the regulations promulgated thereunder. Plaintiff, who is a member of a protected class of persons under the ADA, has a physical disability that substantially limits his major life activity of sight within the meaning of 42 U.S.C. §§ 12102(1)(A)-(2)(A). Furthermore, Plaintiff has been denied full and equal access to the Website, www.madewell.com has not been provided services that are provided to other patrons who are not disabled; and has been provided services that are inferior to the services provided to non-disabled persons. Defendant has failed to take any prompt and equitable steps to

remedy the discriminatory conduct, as the violations are ongoing. Upon information and belief, Defendant has received prior notice of these accessibility anomalies through consumer complaints, automated audit findings, and industry-standard compliance tools. Despite this notice, Defendant has failed to implement WCAG-compliant remediation, demonstrating a pattern of disregard for its obligations under federal law.

55. Under 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff requests relief as set forth within the section **Prayer For Relief** below.

## SECOND CAUSE OF ACTION
**(New York State Human Rights Law)**
**("NYSHRL")**

56. Plaintiff, **JEFFREY PARKER,** on behalf of himself and the Class and New York City Sub-Classes Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

57. At all times relevant to this action, the New York State Human Rights Law ("NYSHRL"), Article 15 of the New York Executive Law §§ 290 *et seq.*, covers the actions of the Defendants.

58. Plaintiff, at all times relevant to this action, as a result of his loss of vision, has a substantial impairment to a major life activity and is an individual with a disability under Article 15 of N.Y. Executive Law § 292(21).

59. Defendants, at all relevant times to this action, own and operate a place of public accommodation, the subject Website, www.madewell.com within the meaning of Article 15 of N.Y. Executive Law § 292(9). Defendant is a "person" within the meaning of Article 15 of N.Y. Executive Law § 292(1).

60. Plaintiff has visited the Website, www.madewell.com on a number of occasions and has encountered barriers to his access that exist.

61. Under Article 15 N.Y. Executive Law § 296(2)(a) "it shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation ... because of the ... disability of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof."

62. Discrimination includes the refusal to adopt and implement reasonable modifications in policies, practices, or procedures when they are necessary to afford facilities, privileges, advantages, or accommodations to individuals with disabilities. Article 15 of N.Y. Executive Law § 296(2)(a), § 296(2)(c)(i).

63. Defendant's actions violate Article 15 of N.Y. Exec. Law § 296(2)(a) by discriminating against the Plaintiff and Subclass by (i) owning and operating a website that is inaccessible to disabled individuals who are sight-impaired and cannot discern the content thereof without the use of a screen-reading program; (ii) by not removing access barriers to its Website in order to make accessibility features of the sites known to disabled individuals who are sight-impaired; and (iii) by refusing to modify the Website when such modifications are necessary to afford facilities, privileges, advantages or accommodations to individuals with disabilities. This inaccessibility denies disabled individuals who are sight-impaired full, and equal access to the facilities, goods, and services that the Defendant makes available to individuals who are not disabled and can see without the need of a screen-reading program or other similar device. Article 15 of N.Y. Exec. Law § 296(2)(c).

64. The Defendant's discriminatory practice also includes, "a refusal to take such steps as may be necessary to ensure that no individual with a disability is excluded or denied services because of the absence of auxiliary aids and services, unless such person can demonstrate that taking such steps would fundamentally alter the nature of the facility, privilege, advantage or accommodation

being offered or would result in an undue burden." Article 15 of N.Y. Exec. Law§ 296(2)(c).

65. Established guidelines exist for making websites accessible to disabled individuals. The International Website Standards Organization, the Worldwide Consortium, known throughout the world as "W3C," has published version 2.1 of the Web Content Accessibility Guidelines ("WCAG 2.1"). WCAG 2.1 is well-established guideline for making websites accessible to the blind and visually impaired people. These guidelines are universally followed by most large business entities and government agencies to ensure websites are accessible.

66. Defendant has intentionally and willfully discriminated against the Plaintiff and Subclass and violation of the New York State Human Rights Law, Article 15 of N.Y. Exec. Law § 296(2) and the discrimination continues to date.

67. Absent injunctive relief, Defendant's discrimination will continue against Plaintiff and Subclass, causing irreparable harm.

68. Plaintiff and the Subclass are therefore entitled to compensatory damages, civil penalties, and fines for every discriminatory act in addition to reasonable attorney fees and costs and disbursements of this action. Article 15 of N.Y. Exec. Law §§ 297(9), 297(4)(c) *et seq.*

69. Plaintiff repeats and realleges every allegation contained in the foregoing paragraphs as if fully set forth herein.

70. An actual controversy has arisen and now exists between the parties in that Plaintiff contends, and is informed and believes Defendant denies, that Defendant's website contains access barriers denying blind customers full and equal access to the products, services, and facilities offered through the website.

71. A judicial declaration is necessary and appropriate at this time so that the parties may know their respective rights and duties and act accordingly.

**THIRD CAUSE OF ACTION**
**(Violation of New York State Civil Rights Law)**
**("NYCRL")**

72. Plaintiff, **JEFFREY PARKER,** on behalf of himself and the New York City Subclass Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

73. Plaintiff served notice thereof upon the New York State Attorney General, as required by N.Y. Civil Rights Law § 41. (Notice to Attorney General)

74. Persons within New York State are entitled to full and equal accommodations, advantages, facilities, and privileges of places of public accommodations, resort or amusement, subject only to the conditions and limitations established by law and applicable alike to all persons. No person, being the owner of a place of public accommodation, shall directly or indirectly refuse, withhold from, or deny to any person any of the accommodations, advantages, facilities, and privileges thereof. N.Y. Civ. Rights Law § 40.

75. No person because of disability, as defined in § 292(21) of the Executive Law, shall be subjected to any discrimination in his or him civil rights by person or by any firm, corporation, or institution, or by the state or any agency or subdivision. N.Y. Civ. Rights Law ("NYCRL") § 40-c.

76. § 292 of Article 15 of the N.Y. Executive Law deems a disability, a physical, mental, or medical impairment resulting from anatomical, physiological, genetic, or neurological conditions that prevent the exercise of a normal bodily function. As such, the Plaintiff is disabled under the N.Y. Civil Rights Law.

77. Defendant discriminates against the Plaintiff and Subclass under NYCRL § 40 as Defendant's Website, www.madewell.com is a place of public accommodation that does not provide full and equal accommodation, advantages, facilities, and privileges to all persons and discriminates

against disabled individuals who are sight impaired.

78. Defendant intentionally and willfully failed to remove the barriers on their Website, discriminating against the Plaintiff and Subclass preventing access in violation of NYCRL § 40.

79. Defendant has failed to take any steps to halt and correct its discriminatory conduct and discriminate against the Plaintiff and the Subclass members.

80. Under N.Y. Civil Rights Law § 41, "a corporation which violates any of the provisions of §§ 40, 40-a, 40-b or 42 shall be liable for a penalty of not less than one hundred dollars nor more than five hundred dollars, to be recovered by the person aggrieved thereby… in any court of competent jurisdiction in the county in which the plaintiff or defendants shall reside." *Id...*

81. Plaintiff and the SubClass hereby demand compensatory damages of five hundred dollars ($500.00) for the Defendant's acts of discrimination, including civil penalties and fines under N.Y. Civil Law § 40 *et seq.*

**FOURTH CAUSE OF ACTION**
**(Violations of the New York City Human Rights Law)**
**("NYCHRL")**

82. Plaintiff, **JEFFREY PARKER,** on behalf of himself and the New York City Sub-Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

83. N.Y.C. Administrative Code § 8-107(4)(a) provides that "It shall be an unlawful discriminatory practice for any person who is the owner, franchisor, franchisee, lessor, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation: [b]ecause of any person's . . . disability . . . directly or indirectly: [t]o refuse, withhold from or deny to such person the full and equal enjoyment, on equal terms and conditions, of any of the accommodations, advantages, services, facilities or privileges of the place or provider of public accommodation".

84. Defendant is subject to NYCHRL because it owns and operates the Website, www.madewell.com making it a "person" within the meaning of N.Y.C. Admin. Code § 8-102(1).

85. Defendant violates N.Y.C. Administrative Code § 8-107(4)(a) in refusing to update or remove access barriers to Defendant's Website, www.madewell.com causing the Website and the services integrated completely inaccessible to the blind. This inaccessibility denies blind patrons full and equal access to the facilities, products, and services that Defendant makes available to the non-disabled public.

86. Defendant is required to "make reasonable accommodation to the needs of persons with disabilities . . . any person prohibited by the provisions of [§ 8-107 *et seq.*] from discriminating based on disability not to provide a reasonable accommodation to enable a person with a disability to satisfy the essential requisites of a job or enjoy the right or rights in question provided that the disability is known or should have been known by the covered entity." N.Y.C. Admin. Code § 8-107(15)(a).

87. Defendant's actions constitute willful intentional discrimination against the Sub-Class based on a disability in violation of the N.Y.C. Administrative Code § 8107(4)(a) and § 8-107(15)(a), in that Defendant has:

a. constructed and maintained a Website that is inaccessible to blind class members with knowledge of the discrimination; and/or

b. constructed and maintained a Website that is sufficiently intuitive and/or obvious that is inaccessible to blind class members; and/or

c. failed to take actions to correct these access barriers in the face of substantial harm and discrimination to blind class members.

88. Defendant has failed to take any prompt and equitable steps to remedy the discriminatory conduct as these violations are ongoing.

89. As such, Defendant discriminates and will continue in the future to discriminate against Plaintiff and other members of the proposed class and subclass based on disability in the full and equal enjoyment of the products, services, facilities, privileges, advantages, accommodations and/or opportunities of the Website under N.Y.C. Administrative Code § 8-107(4)(a). Unless the Court enjoins Defendant from continuing to engage in these unlawful practices, Plaintiff and members of the Class will continue to suffer irreparable harm.

90. Defendant's actions were to violate the NYCHRL, and therefore, Plaintiff invokes the right to injunctive relief to remedy the discrimination.

91. Plaintiff is also entitled to compensatory damages, as well as civil penalties and fines under N.Y.C. Administrative Code § 8-120(8) and § 8-126(a) for each offense as well as punitive damages pursuant to § 8-502.

92. Plaintiff is also entitled to reasonable attorneys' fees and costs.

93. Under N.Y.C. Administrative Code § 8-120 and § 8-126 and the remedies, procedures, and rights set forth and incorporated therein Plaintiff prays for judgment as set forth below.

**FIFTH CAUSE OF ACTION**
**(Declaratory Relief)**

94. Plaintiff, **JEFFREY PARKER,** on behalf of himself and the Class and New York City Sub-Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

95. An actual controversy has arisen and now exists between the parties in that Plaintiff contends, and is informed and believes that Defendant denies, that the Website contains access barriers denying blind customers the full and equal access to the products, services and facilities of the Website, which Defendant owns, operates and controls, fails to comply with applicable laws including, but not limited to, Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12182,

*et seq.*, and N.Y.C. Admin. Code § 8-107, *et seq*., prohibiting discrimination against the blind.

96. A judicial declaration is necessary and appropriate at this time so that each of the parties may know its respective rights and duties and act accordingly.

**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff respectfully requests that this Court grant the following relief:

- A preliminary and permanent injunction prohibiting Defendant from violating Title III of the ADA, 42 U.S.C. § 12182 et seq.;
- A preliminary and permanent injunction requiring Defendant to take all steps necessary to make www.madewell.com fully accessible to and usable by blind and visually impaired individuals, including through adoption and maintenance of WCAG-conforming accessibility measures;
- A declaration that Defendant owns, maintains, controls, and/or operates its website in a manner that discriminates against blind individuals and fails to provide equal access as required by law;
- An order certifying the proposed Class and New York Subclass under Fed. R. Civ. P. 23, appointing Plaintiff as Class Representative, and appointing him counsel as Class Counsel;
- An award of costs, litigation expenses, and reasonable attorneys' fees to the fullest extent permitted by law; and
- Such other and further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury on all issues so triable.

Dated: New York, New York
October 5, 2026

Respectfully submitted,
**JOSEPH & NORINSBERG, LLC**

*/s/ Robert Schonfeld*
Robert Schonfeld, Esq.
*Attorneys for Plaintiff*
825 Third Avenue, Suite 2100
New York, New York 10022
Tel. No.: (212) 227-5700
Fax No.: (212) 656-1889